UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| VESPER MARITIME LIMITED<br>as Owner of the S/Y VESPER,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>LYMAN MORSE BOATBUILDING, INC.<br>of Thomaston, Maine,<br><br>　　　　　　　　　Defendant. | Docket No. 2:19-cv-00056-NT |

### DEFENDANT LYMAN MORSE BOATBUILDING INC.'S MOTION TO DISMISS COUNTS 3, 4, 5, 6, 7, AND 9 OF VESPER MARITIME LTD.'S COMPLAINT WITH INCORPORATED MEMORANDUM OF LAW

NOW COMES the Defendant, Lyman Morse Boatbuilding, Inc. ("Lyman Morse"), by and through undersigned counsel, and, pursuant to Rule 12(b)(1) and (6), F.R. Civ. P., hereby moves to dismiss Counts 3 (Maritime Negligence), 4 (Maritime Bailment), 5 (Maritime *Res Ipsa Loquitur*), 6 (Fraudulent Misrepresentation), 7 (Negligent Misrepresentation), and 9 (Maritime Punitive Damages) of Plaintiff Vesper Maritime Ltd.'s ("Vesper Maritime") Complaint because the claims do not satisfy the Court's standard for admiralty jurisdiction under 28 U.S.C. § 1333 over torts and the corresponding application of maritime law, as more fully provided as follows:

Standard of Review:

A motion to dismiss for failure to state a claim tests the legal sufficiency of the claim. *Bennett v. Roark Capital Group, Inc.*, 738 F. Supp. 2d 157, 158 (D. Me. 2010). In considering Lyman Morse's motion to dismiss, the Court "must accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences in [Vesper Maritime's] favor." *Id.*

1

To survive a motion to dismiss, the complaint must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "In other words, the complaint must contain enough facts to raise a reasonable expectation that discovery will reveal evidence supporting the claim, and the factual allegations contained therein must be enough to raise a right to relief above the speculative level. Thus, a motion to dismiss should only be granted if it appears to a certainty that the plaintiff would be unable to recover under any set of facts." *Ramirez v. DeCoster*, 11-CV-00194-JAW, 2012 U.S. Dist. LEXIS 86266 (D. Me. June 21, 2012) (citations and internal quotations-omitted).

Here, there is sufficient detail within Vesper Maritime's Complaint to provide the Court adequate basis to consider Lyman Morse's motion to dismiss, namely, that the vessel that is the subject of this lawsuit, *S/V Vesper* ("Vessel") was positioned via Travel-lift and then stored on jackstands, on dry land, at Lyman Morse's boatyard in Thomaston, Maine, on November 9, 2018, and when she fell over at that location in the early morning hours of November 10. Complaint, ECF Doc. # 1, at ¶¶ 12, 13, and 18. These facts are properly alleged in the Complaint and not in dispute. *Id.*

<u>Introduction</u>:

Plaintiff alleges nine causes of action arising from its Vessel being damaged while it was stored on dry land at Lyman Morse's boatyard:

      Count 1: Breach of the Warranty of Workmanlike Performance
      Count 2: Breach of Maritime Contract
      Count 3: Negligence Under General Maritime Law
      Count 4: Maritime Bailment
      Count 5: *Res Ipsa Loquitur* Under Maritime Law
      Count 6: Fraudulent Misrepresentation

    Count 7: Negligent Misrepresentation
    Count 8: Good Faith and Fair Dealing Under Maritime Law
    Count 9: Punitive Damages Under the General Maritime Law

*See* Complaint at 5-11. There is no dispute that Lyman Morse's contract to store and repair Plaintiff's Vessel was a maritime contract, and therefore the alleged (and denied) breach of a maritime contract claim (Count 2) falls within the Court's admiralty jurisdiction. The claims of breach of the warranty of workmanlike performance (a maritime contract doctrine) (Count 1) and good faith and fair dealing under maritime law (Count 8) are in reality a duplication of the breach of maritime contract claim as these claims allege breach of implied contractual terms. Thus, the three claims amount to but one claim for breach of a maritime contract. The remaining claims alleged to be "maritime" are tort-based claims that do not satisfy the standard for admiralty jurisdiction and application of general maritime law. Those claims should be dismissed, without prejudice to Plaintiff's right to assert the corresponding claims under Maine state law, so long as those claims meet the Court's ancillary jurisdiction standard.

    Plaintiff's claims for Fraudulent Misrepresentation (Count 6) and Negligent Misrepresentation (Count 7) are not alleged to be maritime claims. However, those claims must also be dismissed for failure to satisfy the specificity requirements of Rule 9(b), F.R. Civ. P., and the progeny of cases on point in this District, as more fully provided below.

<u>Legal Argument</u>:

    Whether a contract is maritime "depends upon ... the nature and character of the contract," and the true criterion is whether it has "reference to maritime service or maritime transactions." *North Pacific S.S. Co. v. Hall Brothers Marine Railway & Shipbuilding Co.*, 249 U.S. 119, 125 (1919) (citing *Insurance Co. v. Dunham*, 11 Wall. 1, 26, 20 L.Ed. 90 (1871)). *See also Exxon Corp. v. Central Gulf Lines, Inc.*, 500 U.S. 603, 611, 111 S.Ct. 2071, 114 L.Ed.2d 649 (1991) ("[T]he

3

trend in modern admiralty case law ... is to focus the jurisdictional inquiry upon whether the nature of the transaction was maritime"). Federal courts have traditionally held that contracts to repair an existing vessel (as opposed to building a new vessel) fall within the umbrella of admiralty jurisdiction. *Kossick v. United Fruit Co.*, 365 U.S. 731, 735 (1961). "Such contracts, for repairs on ships are governed by the Suits in Admiralty Act, 46 U.S.C. §§ 741–752 (1982), a body of law judicially entrusted to the United States District Courts." *Jo-Mar Corp. v. United States*, 15 Cl.Ct. 602, 607 (1988); *see United States v. United Continental Tuna Corp.*, 425 U.S. 164 (1976). Furthermore, in maritime law, oral contracts are traditionally regarded as valid. *Kossick*, 365 U.S. at 734. Therefore, the Lyman Morse contract for assistance with the Vessel's steering repair was a maritime contract subject to admiralty jurisdiction, as alleged in Plaintiff's Complaint at ¶¶ 9 and 15).

But the jurisdictional tests for maritime contract law and maritime tort law have long been different. *See State Indus. Comm'n of N.Y. v. Nordenholt Corp.*, 259 U.S. 263, 271 (1922). Maritime contract law applies based on the nature and character of the contract, rather than looking to where the breach occurred. *Norfolk*, 543 U.S. at 24. Conversely, maritime jurisdiction covers torts that occur on the high seas (or the navigable waters appurtenant thereto) and bear a significant relationship to traditional maritime activity. *Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 268 (1972); *Alleman v. Omni Energy Servs. Corp.*, 580 F.3d 280, 285 (5th Cir. 2009). To invoke federal admiralty jurisdiction over its tort claims, Plaintiff "must satisfy conditions both of location and of connection with maritime activity." *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995). The location condition of the maritime tort test is satisfied if either (1) the tort occurred on navigable water, or (2) a vessel on navigable water caused injury suffered on land. *Id.* at 534. Here, the vessel did not "cause injury"; it fell over on its

jackstands while being stored on dry land. Complaint at ¶¶ 12, 13, and 18. Thus, to fall within admiralty jurisdiction, Plaintiff's tort claims must arise from a tort that "occurred on navigable water." *Grubart* at 534.

Plaintiff's Complaint clearly states this accident occurred on dry land when the Vessel fell from its stored position onto the ground. *See* Complaint at ¶¶ 11-18. Numerous federal courts have found that property damage caused while a vessel is stored on land does not meet the locality test and, consequently, that such a claim is not independently within an admiralty court's jurisdiction. *See, e.g.*, *Omaha Indem. Co. v. Whaleneck Harbor Marina, Inc.*, 610 F. Supp. 154, 156–57 (E.D.N.Y. 1985) (explaining that, where a storage/repair shop negligently stored a sailing vessel and that vessel fell from its cradle and was damaged, the alleged tort "occurred on land and had no more connection with maritime activity than if a sea captain's car was damaged in a repair shop"); *Ziegler v. Rieff*, 637 F. Supp. 675, 677 (S.D.N.Y. 1986) (finding that a yacht owner's negligence claim against a storage defendant did not arise under admiralty jurisdiction); *cf. David Wright Charter Service of North Carolina, Inc. v. Wright*, 925 F.2d 783, 784 (4th Cir. 1991) ("Seals's claim for wrongful death and Wright's claim for personal injuries caused by the fire and explosion on Charter's vessel while it was on blocks in a shed do not satisfy the situs test for admiralty jurisdiction"); *Oliver v. Lauderdale Marine Ctr., LLC*, No. 08–61690, 2009 WL 6046982 at * (S.D. Fla. Oct. 5, 2009) (holding similarly). Thus, Plaintiff's tort-based claims are not maritime and do not fall within the Court's admiralty jurisdiction. Because Plaintiff has characterized its tort-based claims solely as "maritime," the claims should be dismissed.

If Plaintiff's tort-based claims were brought under state law, it is possible those claims could remain before the Court.[1] This is because Plaintiff's breach of contract (and duplicative

---

[1] *See* 28 U.S.C. §1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within

claims) clearly fall within the Court's admiralty jurisdiction, and admiralty courts may exercise supplemental jurisdiction over non-maritime, state law tort claims that arise out of the same set of operative facts as maritime contract claims. *See Wright*, 925 F.2d at 784 ("[W]hen the owner joins a breach of contract claim and a negligence claim arising out of the same facts, a court may properly exercise ancillary jurisdiction over the owner's negligence claim against the repair facility even though the tort occurred when the vessel was not on navigable waters."); *see also Whaleneck Harbor Marina*, 610 F. Supp. at 156–57 ("Because the negligence and trespass claims arise out of the same nucleus of operative facts as the contract claims, the Court will exercise ancillary jurisdiction over the former."); *Ziegler*, 637 F. Supp. at 677 (finding same); *Matter of Pennypacker*, No. JFM–16–1317, 2016 WL 4705535 at *3–4 (D. Md. Sept. 8, 2016).

Plaintiff, however, explicitly brought various tort claims under the general maritime law. This was improper, because the "existence *vel non* of admiralty jurisdiction in tort . . . controls the governing law." *Friedman v. Cunard Line Ltd.*, 996 F. Supp. 303, 305 (S.D.N.Y. 1998); *see also Hertz v. Treasure Chest Casino, L.L.C.*, 274 F. Supp. 2d 795, 801 (E.D. La. 2003) ("Of course, the significance of determining admiralty jurisdiction in tort is not only to establish the availability of a federal forum, but also to determine the applicable substantive law."). In other words, because there is no admiralty jurisdiction over Plaintiff's tort claims, the substantive admiralty law does not apply, and Plaintiff, consequently, cannot bring general maritime law tort-based claims. *See Hertz*, 274 F. Supp. at 797, 807 (finding that the court lacked admiralty jurisdiction and dismissing

---

such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."). Notably, the federal district court's exercise of supplemental (ancillary) jurisdiction is discretionary. *See Pueblo International, Inc., v. De Cardona,* 725 F.2d 823, 826 (1st Cir. 1984). Factors which courts consider in making this determination may include: whether the alleged state violations are similar to the federal violations; whether the facts necessary to prove the state claims are similar to those needed to prove the federal claims; or whether the state claims substantially predominate the federal claims. *See id.*

6

the plaintiff's general maritime law negligence claim). Accordingly, all claims other than Plaintiff's contract-based claims should be dismissed.

"*Res Ipsa Loquitor* Under Maritime Law" (*See* Complaint at 9) is not a cause of action; it is an evidentiary doctrine used by plaintiffs to establish the tort element of causation. *Estate of Larkins v. Farrell Lines, Inc.*, 806 F.2d 510, 512 (4th Cir. 1986), *citing Johnson v. United States*, 333 U.S. 46, 92 L. Ed. 468, 68 S. Ct. 391 (1948); *see also Tillson v. Odyssey Cruises*, No. 08-10997-DPW, 2011 U.S. Dist. LEXIS 7911, at *18 (D. Mass. 2011) ("As a general principle, the doctrine of *res ipsa loquitur* is therefore viewed as a theory of evidence, rather than as an independent grounds for liability."). Thus, Plaintiff's claim for *res ipsa loquitor* should be dismissed. Furthermore, as explained above, the accident and allegations contained in Plaintiff's Complaint do not satisfy the standard for a maritime tort-based subject matter jurisdiction, and therefore Plaintiff does not have a claim for *res ipsa loquitor* against Lyman Morse under general maritime law. This claim should be dismissed.

Plaintiff has also alleged "Punitive Damages Under the General Maritime Law" as a cause of action. *See* Complaint at 11. While punitive damages are alleged as a cause of action, they are not an independent cause of action, but rather another element of damages and therefore Plaintiff's Count IX should be dismissed. *S. Port Marine, LLC v. Gulf Oil Ltd. P'ship*, 234 F.3d 58, 64 (1st Cir. 2000) ("Punitive damages, however, do not constitute a separate cause of action, but instead form a remedy available for some tortious or otherwise unlawful acts. Consequently, plaintiff's claim for punitive damages must relate to some separate cause of action which permits recovery of punitive damages."). As explained above, the accident and allegations of Plaintiff's Complaint do not satisfy the standard for a maritime tort-based subject matter jurisdiction, and therefore Plaintiff does not have tort-based claims against Lyman Morse under general maritime law. While

7

Plaintiff can maintain contract-based claims against Lyman Morse under General Maritime Law, maritime contract claims "ordinarily do not support an award of punitive damages" under maritime law unless the breaching conduct also gives rise to a maritime tort of sufficient severity to support an award of maritime punitive damages. *Ellenwood v. Exxon Shipping Co.*, 984 F.2d 1270, 1284 (1st Cir. 1993). "Punitive damages are not recoverable for a breach of contract unless the conduct constituting the breach is also a tort for which punitive damages are recoverable." *Restatement (Second) of Contracts* § 355 (1979); *see also Thyssen, Inc. v. S.S. Fortune Star*, 777 F.2d 57, 62–63 (2d Cir. 1985); *Gamma-10 Plastics, Inc. v. American President Lines, Ltd.*, 32 F.3d 1244, 1257 (8th Cir. 1994). Therefore, because Plaintiff does not have a maritime tort-based claim against Lyman Morse, it does not have a punitive damages claim under maritime law. Any negligence claim against Lyman Morse would have to arise under Maine state law and any corresponding punitive damages claim would also have to arise under Maine law. Plaintiff has not alleged either state law tort claims or state law punitive damages claims. Plaintiff's "Punitive Damages Under the General Maritime Law" cause of action should be dismissed.

Plaintiff has also alleged fraudulent and negligent misrepresentation claims against Lyman Morse. Complaint at 9 – 10 (Counts 6 and 7). Fraud and misrepresentation must, under the Civil Rules, be pleaded with specificity. Fed. R. Civ. P. 9(b); *Powers v. Bos. Cooper Corp.*, 926 F.2d 109, 111 (1st Cir. 1991), citing *McGinty v. Beranger Volkswagen, Inc.*, 633 F.2d 226, 228-29 (1st Cir. 1980); *Lopez v. Bulova Watch Co.*, 582 F. Supp. 755, 766 (D.R.I. 1984). Plaintiff has not met this burden on either Count 6 (Fraudulent Misrepresentation) or Count 7 (Negligent Misrepresentation).

The *Powers* court wrote: "This rule entails specifying in the pleader's complaint the time, place, and content of the alleged false or fraudulent representations." *Id.* Finding that the plaintiff's

complaint was "totally deficient," the court reasoned that a "fraud count [that] is almost wholly conclusory, and . . . lacking in specifics. . . . is too vague to meet the Rule 9(b) benchmark." *Id., citing Lopez*, 582 F. Supp. at 766 (internal citations and quotations omitted). The court dismissed the counts.

The same is true with Vesper Maritime's fraudulent and negligent misrepresentation claims (Counts 6 and 7). Vesper Maritime alleges in Count 6 that Lyman Morse "represented that it would do its work in a competent and workmanlike fashion" (Complaint at ¶ 52); "The representations made by Lyman Morse were false." (*Id*. at ¶ 54); and "The representations made by Lyman Morse, when made, were either known to be false or made recklessly without knowledge of its truth." (*Id.* at ¶ 55). Vesper Maritime alleges in Count 7 that Lyman Morse "supplied false information for the guidance of VML in the transaction" (Complaint at ¶ 59) and "failed to exercise reasonable care or competence in obtaining or communicating the information it provided to VML." (Complaint at ¶ 61).

Not only does Vesper Maritime not allege the "time, place, and content" of the alleged falsities, its allegations are "wholly conclusory" and "lacking in specifics" and therefore "too vague to meet the Rule 9(b) benchmark." *Powers* at 111.

This should not serve as an opportunity for Plaintiff Vesper Maritime to subsequently amend its pleading consistent with typical notice-pleading allowances. The court in *Segal v. Gordon*, 467 F.2d 602, 607 (2d Cir. 1972), cited favorably by *Lopez, supra,* explained:

> Fraud is different than ordinary notice pleading. In run-of-the-mill cases, the rules of pleading allow a party to discover a claim after filing. The very purpose of Rule 9(b), however, runs to the contrary. In cases in which fraud lies at the core of the action, the rule does not permit a complainant to file suit first, and subsequently to search for a cause of action. The mandate for specificity is a product of the desire to protect defendants from the harm that comes to their reputations or to their goodwill when they are charged with serious wrongdoing . . .

*Segal* at 607 (internal quotations omitted).

Vesper Maritime alleges no actual statements by Lyman Morse that were supposedly false, either knowingly or recklessly, nor does it describe when such statements were made. The *Lipez* court averred that it must weigh the competing interests of Rules 8 and 9(b), but that, nonetheless, "the reconciliation of the two rules does not afford a suitor carte blanche to pursue a defendant in an action based on fraud with buckshot." *Lipez* at 766.

At their core, Plaintiff's Counts 6 and 7 are claims of fraud, since they allege, without any specific allegations, that Lyman Morse personnel somehow, purposefully, knowingly, or recklessly, misrepresented its abilities in storing the Vessel. *Segal* at 607; *Lipez* at 766. This is not sufficient for the specificity requirements of Rule 9(b), and Plaintiff should not be entitled "to file suit first, and subsequently to search for a cause of action." *Segal* at 607. For the foregoing reasons, Plaintiff's Counts 6 and 7 should be dismissed.

<u>Conclusion:</u>

For the foregoing reasons, Defendant Lyman Morse Boatbuilding, Inc., respectfully moves this Honorable Court to dismiss Counts 3 (Maritime Negligence), 4 (Maritime Bailment), 5 (Maritime *Res Ipsa Loquitur*), 6 (Fraudulent Misrepresentation); 7 (Negligent Misrepresentation), and IX (Maritime Punitive Damages) and for whatever and further relief this Court deems just and proper.

DATED at Portland, Maine this 18th day of March, 2019.

                                        Lyman Morse Boatbuilding, Inc.
                                        By Their Attorneys,

                                        */s/ Twain Braden*
                                        Twain Braden, Esq.

                                        */s/ Elizabeth K. Peck*
                                        Elizabeth K. Peck, Esq.

                                        */s/ Raymond T. Waid*
                                        Raymond T. Waid, Esq.
                                        (*pro hac vice*)

| THOMPSON BOWIE & HATCH, LLC | LISKOW & LEWIS, PLC |
|---|---|
| 415 Congress St.; P.O. Box 4630 | One Shell Square |
| Portland, Maine 04112-4630 | 701 Poydras Street, Suite 5000 |
| (207) 774-2500 | New Orleans, LA 70139 |
| tbraden@thompsonbowie.com | (504) 581-7979 |
| epeck@thompsonbowie.com | rwaid@liskow.com |

## **CERTIFICATE OF SERVICE**

    I, Twain Braden, hereby certify that on March 18, 2019, I electronically filed the within document with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing(s) to such counsel as have entered an appearance in this matter.

                                          */s/ Twain Braden*
                                        Twain Braden, Esq.