*UNITED STATES DISTRICT COURT*
*DISTRICT OF MAINE*

| | | |
|---|---|---|
| ***VESPER MARITIME LIMITED,*** | ***)*** | |
| | ***)*** | |
| ***Plaintiff*** | ***)*** | |
| ***v.*** | ***)*** | ***No. 2:19-cv-00056-NT*** |
| | ***)*** | |
| ***LYMAN MORSE BOATBUILDING, INC.,*** | ***)*** | |
| | ***)*** | |
| ***Defendant*** | ***)*** | |

***MEMORANDUM DECISION AND ORDER ON***
***MOTIONS TO QUASH AND COMPEL DISCOVERY***

In this action in which plaintiff Vesper Maritime Limited ("VML"), the owner of the Sailing Yacht Vesper ("S/Y VESPER"), seeks to recover damages sustained when the S/Y VESPER fell from jack-stands during a November, 10, 2018, windstorm at the boatyard of defendant Lyman Morse Boatbuilding, Inc. ("Lyman Morse"), *see* First Amended Complaint (ECF No. 39) ¶¶ 4-18, 31, non-party W. Gardner Wallace ("Gardner") moves to quash subpoenas to testify at deposition and produce documents, *see* Motion to Quash Subpoena to Testify at a Deposition in a Civil Action ("Motion to Quash Deposition Subpoena") (ECF No. 83); Motion to Quash Subpoena to Produce Documents[,] Information or Objects or to Permit Inspection of Premises in a Civil Action ("Motion to Quash Subpoena *Duces Tecum*") (ECF No. 84) (together, "Motions to Quash Subpoenas"), and Lyman Morse moves to enforce subpoenas commanding Monte J. Wallace ("Monte"), VML's sole director and shareholder, to testify at deposition and produce documents, *see* Defendant Lyman Morse Boatbuilding, Inc.'s Motion . . . to Enforce Subpoenas Issued to Monte J. Wallace ("Motion to Enforce Subpoenas") (ECF No. 96). For the reasons that follow, after hearing oral argument on all three motions on February 14, 2020, I

granted Lyman Morse's motion to enforce its subpoenas served on Monte and denied Gardner's motions to quash the subpoenas served on him, with the provisos discussed below.

## I. Applicable Legal Standard

Federal Rule of Civil Procedure 45 provides, in relevant part, "On timely motion, the court for the district where compliance is required" – in this case, the District of Maine – "must quash or modify a subpoena that . . . subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv).[1] The movant bears the burden of establishing that the portions of the subpoena at issue impose an undue burden on him or her. *See, e.g.*, 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* ("Wright & Miller") § 2463.1, at 507 (3d ed. 2008).

"Whether a subpoena subjects a witness to undue burden . . . usually raises a question of the reasonableness of the subpoena[,]" requiring "a court to balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it[.]" *Id*. at 501 (footnote omitted). "[T]his process of weighing a subpoena's benefits and burdens calls upon the trial court to consider whether the information is necessary and whether it is available from any other source[,]" which is "obviously . . . a highly case specific inquiry and entails an exercise of judicial discretion." *Id*. at 501-06 (footnotes omitted).

"In addition, subpoenas duces tecum to a third party are discovery devices which, although governed in the first instance by Rule 45, are also subject to the parameters established by Rule 26." *Hume v. Consol. Grain & Barge, Inc.*, CIVIL ACTION NO. 15-935, 2016 WL 7385699, at *2 (E.D. La. Dec. 21, 2016) (citations and internal quotation marks omitted). *See also, e.g.*, *EEOC v. Tex. Roadhouse, Inc.*, 303 F.R.D. 1, 2 (D. Mass. 2014) ("A subpoena issued to a non-party pursuant to Rule 45 is subject to Rule 26(b)(1)'s overriding relevance requirement.").

[1] The "[p]lace of [c]ompliance" is defined, in relevant part, as "a place within 100 miles of where the person resides, is employed, or regularly transacts business in person[.]" Fed. R. Civ. P. 45(c)(2)(A).

In turn, Rule 26 provides, in relevant part:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). As in the case of Rule 45(d)(3)(A)(iv), analysis pursuant to Rule 26(b)(1) requires the court to "engage[] in a balancing test, weighing the defendants' need for this information, the availability of other means of obtaining it, and the burden placed on the claimants by the subpoenas." *Tex. Roadhouse*, 303 F.R.D. at 2.

**II. Lyman Morse's Motion to Enforce Subpoenas**

On January 22, 2020, Lyman Morse served subpoenas on Monte, through counsel for VML, commanding him to testify and to produce documents. *See* Motion to Enforce Subpoenas at 4. I directed that Lyman Morse file any motion to compel Monte's compliance with those subpoenas no later than January 31, 2020, *see* Amended Order (ECF No. 94), and Lyman Morse did so, *see* Motion to Enforce Subpoenas. Lyman Morse did not provide copies of its subpoenas; however, it represented that it sought to depose Monte regarding "his knowledge of the Vessel in 2018, the grounding, his plans for control of the Vessel at the time, and the overall condition of *Vesper* prior to the incident of November 10, 2018, irrespective of the grounding[,]" and that it sought documents from him that were "related to the grounding and the repairs related to that grounding and communications (with his son) regarding control of the Vessel in 2018." *Id*. at 8.[2]

[2] Lyman Morse describes the "grounding" incident as having been reported on November 4, 2018, by Captain Phillip Henderson to Gardner, who is Monte's son. *See* Motion to Enforce Subpoenas at 5 & n.1. Captain Henderson wrote that he had to abandon a trip to Antigua and return to Lyman Morse "because the lower rudder bearing appeared to be 'coming apart and tearing its way out of the boat'" and that he had "'just been made aware that Vesper grounded hard at the dock in Portland toward the end of the summer and sat on its rudder for some time in windy conditions during a very low tide.'" *Id*. at 5 (footnote omitted).

VML and Monte filed a "limited objection" to Lyman Morse's motion to compel, agreeing to produce Monte to appear for deposition in Florida without need of the subpoena but requesting that the court "impose reasonable limitations on the scope of the deposition[,]" for example, that "the deposition be limited to matters dealing directly with issues in the case and not the personal or business concerns of Monte Wallace." Limited Objection of Vesper Maritime Limited and Monte Wallace to Defendant's Motion to Compel Compliance with Subpoena on Monte Wallace (ECF No. 98) at [2]. However, VML and Monte urged the court to quash the subpoena *duces tecum* on the bases that the documents either had already been sought through VML or were irrelevant and that the request for "'all emails'" was overly broad and disproportionate to the needs of the litigation. *Id*.

Lyman Morse rejoined that, to the extent that Monte's business concerns and communications with Gardner bear on issues relevant to this case, Lyman Morse should be permitted to explore them at deposition, and that its subpoena *duces tecum* was properly limited in scope, seeking "production of 'all emails in your possession regarding S/V Vesper and/or [VML] including, but not limited to emails between you and Capt. Phillip Henderson from 9/1/18 until 11/10/18, and you and Gardner Wallace from 1/1/18 and 11/10/2018.'" Defendant's Response to Plaintiff's and Monte Wallace's Limited Objection to Defendant's Motion [to] Enforce Subpoenas Issued to Monte Wallace (ECF No. 99) at 4-6.

At hearing, counsel for VML requested that, if the court were inclined to grant the motions to compel, it limit the temporal scope of both subpoenas to the period from August 1, 2018, forward, roughly coinciding with the timing of the alleged grounding incident.

With the benefit of briefing and oral argument, I granted Lyman Morse's motion to enforce both subpoenas. I deemed the temporal scope of the subpoena *duces tecum*, spanning a roughly

ten-month period before and after the incident at the heart of this suit, reasonable. I distinguished this case, in which Monte is VML's sole director and shareholder and, as a practical matter, responsible for producing documents on behalf of that entity, from *In re Wood*, No. 2:19-mc-00146-JHR, 2019 WL 5789848, at *2, 4 (D. Me. Nov. 6, 2019), in which I quashed a subpoena as imposing an undue burden on the non-party chairman of the boards of the defendant contact lens distributors when there was no question that the defendants themselves should have been able to produce those documents without involvement of the chairman.

With respect to the subpoena to testify at deposition, I declined to render an advisory ruling concerning the permissible scope of questioning; however, I noted that Lyman Morse's counsel represented at hearing that his client seeks documents and testimony pertaining solely to the issues in this case and to the S/Y VESPER and VML. I directed that, should the parties be unable to resolve any disagreement at deposition regarding the scope of questioning, they file the court's Request for Hearing form, providing the precise deposition questions in dispute.[3]

## III. Gardner Wallace's Motions to Quash Subpoenas

I turn to Gardner's motions to quash the subpoenas served on him by Lyman Morse, *see* Motions to Quash Subpoenas, which I denied for the reasons set forth below.

### A. Factual Background

Gardner seeks to quash subpoenas served on him by Lyman Morse on January 6, 2020, to testify at deposition and to produce documents. *See* Motions to Quash Subpoenas & Attachments

---

[3] At hearing, I also observed that, although I had directed that Lyman Morse file a motion to enforce its subpoenas pursuant to Federal Rule of Civil Procedure 45, it arguably was entitled to depose Monte, the sole director and shareholder of VML, pursuant to Federal Rules of Civil Procedure 30(b)(1) and 32(a)(3) as an officer, director, or managing agent of VML. *See, e.g., Copan Italia S.P.A. v. Puritan Med. Prods. Co. LLC*, No. 1:18-cv-00218-JDL, 2019 WL 6179224, at *2 (D. Me. Nov. 20, 2019) ("Only a party to litigation may be compelled to give testimony pursuant to a notice of deposition. . . . [T]he party seeking the deposition [of a corporation] may identify a specific officer, director, or managing agent to be deposed and notice that person under Rule 30(b)(1).") (citation and internal quotation marks omitted). However, without objection, the parties proceeded by way of the application of Rule 45, and nothing turns on the distinction.

(ECF Nos. 83-1, 84-1) thereto. With respect to documents, he is commanded to produce "[a]ll emails in [his] possession regarding S/V Vesper and / or [VML], including but not limited to emails between [himself] and Capt. Phillip Henderson from Sept. 1, 2018, until Nov. 10, 2018, and [himself] and Monte Wallace from Jan. 1, 2018, until Nov. 10, 2018." Attachment (ECF No. 84-1) to Motion to Quash Subpoena *Duces Tecum* at Page ID # 560.

Gardner, who is the chairman of GID, a 60-year-old privately-held real estate company, has searched for emails from Captain Henderson to himself or himself to Captain Henderson between September 1, 2018, and November 10, 2018, and has none. Declaration of W. Gardner Wallace ("Gardner Decl.") (ECF No. 97) ¶¶ 1-2. He has also searched for emails between his father, Monte, and himself regarding the S/Y VESPER from January 1, 2018, to November 10, 2018, and has found none. *Id*. ¶ 3. A further search for S/Y VESPER-related emails, if there are any, would impose a burden in the form of actual expense and impositions on Gardner's and others' time and "almost certainly will not turn up anything." *Id*. Monte is a founder of GID, and there may be many emails between Gardner and Monte that do not relate to the S/Y VESPER or VML but do relate to sensitive or confidential business matters or private personal and family matters. *Id*.

Gardner was not aboard the S/Y VESPER at the time of any alleged "grounding." *Id*. ¶ 5. Neither he nor Monte has any direct personal observation or knowledge concerning any alleged "grounding" or any subsequent change in the S/Y VESPER's condition, whether as a result of any "grounding" or otherwise. *Id*. Based on Gardner's understanding of the information technology document retention protocols at GID, it is unlikely that there are any available emails to or from Gardner on any subject that were sent or received more than six months ago. *Id*. ¶ 6. Whatever the availability of the requested emails, there would have to be a careful search and review before

any could be produced. *Id*. ¶ 7. As of the date of Gardner's declaration, it was impossible for him to estimate the cost or duration of such a search and review. *Id*.

Gardner is not and has never been an owner, principal, or officer of VML or an owner of the S/Y VESPER. *Id*. ¶ 9. As he recalls, he was aboard the S/Y VESPER on three to five occasions before August 2018 but noticed nothing anomalous or different about her handling or condition on any occasion on which he was aboard. *Id*. ¶ 10. He has limited experience in sailing large yachts and has always done so under the watchful eye of a professional crew. *Id*. ¶ 11. He is not a naval architect or marine surveyor and has not inspected the S/Y VESPER at any time since the incident that is the subject of this suit. *Id*.

Gardner personally signed the Plaintiff's Answers to Defendant's First Set of Interrogatories and was identified by counsel as the only person assisting counsel in providing those answers. *See* Defendant's Exh. A (ECF No. 88-1) to Defendant Lyman Morse Boatbuilding Inc.'s Consolidated Opposition to Motions to Quash Subpoenas Upon Gardner Wallace ("Opposition") (ECF No. 88) at Page ID ## 574, 576. In an email to Lyman Morse dated August 6, 2018, Captain Henderson wrote that he had "had some ongoing conversation with Gardner Wallace, who takes over the boat as of Sept. 1[,]" and that Gardner was "aware of the massive scale of work involved in our current wish list of projects[.]" Defendant's Exh. B (ECF No. 88-2) to Opposition at Page ID # 577. Gardner was copied on that email, but not Monte. *See id*.

Similarly, in an email from Captain Henderson to Lyman Morse dated July 30, 2018, regarding the scope of work to the S/Y VESPER, Gardner was copied but not Monte. Defendant's Exh. C (ECF No. 88-3) to Opposition at Page ID # 580. In an email to Lyman Morse dated July 18, 2018, discussing work to be done on the S/Y VESPER, Captain Henderson stated, "I will get this[] by Gardner (new owner) today." Defendant's Exh. D (ECF No. 88-4) to Opposition at Page

ID # 583. Captain Henderson also referred to Gardner as the "new owner" of the S/Y VESPER and the "boss" in emails to Lyman Morse and others in 2018 and exchanged emails with Gardner in November 2018 on which Monte was not copied regarding work to the yacht. Defendant's Exh. E (ECF NO. 88-5) to Opposition at Page ID ## 587-99, 600-03.

Captain Henderson has testified that he began to communicate with Gardner in mid-2018, and it was "apparent that Gardner was taking on some of the load of the running and management of the boat" and "was becoming much more to the forefront of those discussions and decisions[.]" Defendant's Exh. F (ECF No. 88-6) to Opposition at Page ID # 606.

**B. Discussion**

With the benefit of the parties' briefs and oral argument at hearing, I denied Gardner's motions to quash the subpoenas served upon him by Lyman Morse, holding that Gardner had fallen short of demonstrating that the subpoenas imposed an undue burden upon him.

Applying the balancing test quoted above, I reasoned that, whereas I had granted a prior motion by Gardner to quash Lyman Morse's subpoena commanding him to testify and produce three categories of documents related to a subsequently acquired vessel, the S/V THISTLE, on the bases, *inter alia*, that Lyman Morse "had made at best only a marginal showing of the relevance of any of the documents or testimony sought from [Gardner][,]" Order (ECF No. 76), Lyman Morse's need for the information sought with respect to the S/Y VESPER is clear and, in this instance, although Gardner remains a non-party, he incontrovertibly had involvement with the S/Y VESPER, having signed VML's interrogatory answers in this suit and having been involved in the S/Y Vesper's operation in mid- to late 2018, during which time Captain Henderson referred to him as the "new owner" and the "boss."

However, in consideration of Gardner's sworn statements regarding his general lack of knowledge, I limited the deposition to a total of two hours and directed that it take place in Boston, Gardner's place of business, unless he elects otherwise. I also directed that the anticipated Rule 30(b)(6) deposition of VML through Captain Henderson take place first, the deposition of Monte take place next, and the deposition of Gardner take place last, to allow for the possibility that the deposition of Gardner may be rendered unnecessary by the deposition testimony of VML and/or Monte. Finally, I extended the parties' discovery deadline to March 31, 2020, solely for the limited purpose of the taking of the depositions of VML, Monte, and Gardner, declining to extend it with respect to additional discovery that the parties reported remains to be completed.[4] I cautioned that, should any discovery dispute arise as a result of the additional discovery with respect to which I declined to extend the parties' January 31, 2020, discovery deadline following multiple prior extensions of that deadline, the parties should be prepared to explain why the court should hear the matter, given the January 31 close of discovery.

## ***NOTICE***

***In accordance with Federal Rule of Civil Procedure 72(a), a party may serve and file an objection to this order within fourteen (14) days after being served with a copy thereof.***

***Failure to file a timely objection shall constitute a waiver of the right to review by the district court and to any further appeal of this order.***

Dated this 21st day of February, 2020.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge

[4] I inquired at hearing whether the taking of the Rule 30(b)(6) deposition of VML and the depositions of Monte and Gardner would have any bearing on VML's pending notice of intent to file for summary judgment and request for a judicial conference. *See* ECF No. 79. The parties assured me that it would not.